Nickerson, Gary A., J.
This matter is before the Court on defendant’s renewed motion for summary judgment pursuant to Mass.R.Civ.P. 56(c) and final judgment pursuant to Mass.R.Civ.P. 58. The defendant filed this action to renew his previously submitted motion for summary judgment on the grounds that no genuine issue of material fact exists on plaintiffs claims. The defendant, Gary L. Shapiro, M.D. (Shapiro), argues that two recent Supreme Judicial Court decisions,[2] both of which were decided after this court (Connon, J.) ruled on defendant’s original motion for summary judgment, directly rebut the legal argument set forth in plaintiffs opposition to defendant’s original motion for summary judgment.[3] For the following reasons, the defendant’s renewed motion for summary judgment is ALLOWED.

BACKGROUND

The undisputed facts viewed in the light most favorable to the non-moving party as revealed by the summary judgment record are as follows.
On October 8, 1991, Patricia Toas (Toas) presented at the Cape Cod Hospital emergency room with abdominal pain. X-rays taken at the time showed a normal abdomen. Two days later, Toas had an abdominal ultrasound that revealed a liver mass. Later that *195 month, Toas consulted with Shapiro for evaluation and treatment of the abdominal pain and an abnormal ultrasound. The defendant treated Toas numerous times between October 29, 1991 and Februaiy 17, 1993.
On December 2, 1996, Toas presented to the Cape Cod Hospital with fainting spells, light-headedness, dizziness, clamminess, and abdominal pain. Again, Toas sought out Shapiro for evaluation and treatment. The defendant treated Toas on at least three occasions in December 1996 and January 1997. On October 28, 1997, Toas was admitted to Jordan Hospital with abdominal pain. A procedure on November 6, 1997 confirmed the presence of cancer and Toas ultimately succumbed to metastatic carcinoma on June 7, 1998. As outlined in the preceding paragraphs, Shapiro treated Toas during two distinct time periods: October 1991 to Februaiy 1993 and December 1996 to Janu-aiy 1997.
This is an action alleging medical malpractice. The plaintiff claims that Shapiro deviated from the standard of care of the reasonable, competent and prudent physician specializing in the fields of internal medicine and gastroenterology. The plaintiff alleges Shapiro failed to conduct appropriate diagnostic testing to ascertain the cause of Toas’ abdominal pain from October 1991 to Januaiy 1997. The plaintiff argues that the defendant’s deviation from the required standard of care resulted in a delay in diagnosis and treatment of Toas’ condition and as a result of the delay, Toas’ cancer had spread so widely that it was incurable. The plaintiff alleges that no other physician was involved with Toas’ specific abdominal care and that Shapiro owed Toas a continuing obligation to treat and diagnose Toas’ condition from October 1991 through Januaiy 1997. The plaintiff argues that the statute of repose be read to include some form of continuous treatment doctrine which would toll the statute until the doctor’s treatment of the specific condition ends.
The defendant maintains that at all relevant times his care was appropriate and complied with the standard of care required of the average qualified physician practicing gastroenterology. The defendant denies any liability and further maintains that nothing he did or failed to do caused or attributed to Toas’ death. In his original motion, and again on his renewed motion for summary judgment, the defendant argues that the plaintiffs case is barred by the applicable statute of repose. The plaintiff filed his complaint in October 2000, which Shapiro claims is more then seven years after any alleged negligent treatment occurred. The defendant argues that recent SJC decisions unequivocally state that the statute of repose is an absolute bar to claims filed seven years after the alleged negligence. Further, Shapiro argues that one of the recent SJC decisions explicitly states that the continuing treatment doctrine does not toll the statute of repose.

DISCUSSION

Summaiy judgment shall be granted when there is no genuine dispute as to any material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on eveiy relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the party establishes the absence of a triable issue, the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17; Godbout v. Cousens, 396 Mass. 254, 261 (1985). A party moving for summaiy judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). On a motion for summaiy judgment, the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether summaiy judgment is appropriate. McGuiness v. Cotter, 412 Mass. 617, 620 (1992). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Bailey v. Bellotti, 459 U.S. 970 (1982).

A. Liability for Treatment Between October 1991 and December 1996

In general, statutes of repose function to limit the duration of liability. Klein v. Catalano, 386 Mass. 701, 709 (1982). The statute of repose set out in G.L.c. 260, §4 bars a medical malpractice claim based on negligent acts or omissions that occur seven years prior to filing a complaint.[4] The purpose of the statute of repose is to “place an absolute time limit on the liability of those within [its] protection and to abolish a plaintiffs cause of action thereafter, even if the plaintiffs injury does not occur, or is not discovered, until after the statute’s time limit has expired.” Nett v. Bellucci, 437 Mass. 630, 635 (2002), quoting McGuinness v. Cotter, 412 Mass. 617, 622 (1992). The statutes serve to “give particular types of defendants the benefit of a date certain on which their liability for past conduct will definitively come to an end.” Id. at 639.
The recent SJC decisions, Joslyn v. Chang, 445 Mass. 344 (2005), and Rudenauer v. Zafiropoulos, 445 Mass. 353 (2005), state that the statute of repose is an absolute bar to claims filed seven years after the *196 alleged negligence. The SJC explained that the adoption of the medical malpractice statute of repose was “the product of much legislative study and consideration of whether limiting the duration of potential medical malpractice liability would control the costs of malpractice insurance and thus protect the supply of medical care in the Commonwealth.” Rudenauer, 445 Mass. at 359. In addition, the SJC has stated “(the statute’s] clear language, as supported by its history and purpose, permits no conclusion other than that the Legislature intended to extinguish malpractice claims seven years after negligent acts or omissions even when a doctor’s treatment of, or responsibility for, a condition continued beyond the alleged negligence.” Rudenauer, 445 Mass. at 358.[5] “Tolling the statute of repose [in cases where an allegedly negligent act or omission was followed by further care by the same doctor] would eliminate the system-wide certainty that the Legislature deemed necessary. Such a result is inimical to the Legislature’s intent.” Rudenauer, 445 Mass. at 359.
Clearly, in light of Rudenauer, the continuing treatment doctrine is not a viable mechanism for tolling the medical malpractice period of repose. Based on the Joslyn and Rudenauer decisions, the statute effectively bars the plaintiff from proceeding against Shapiro based on acts or omissions that were performed or should have been performed prior to October 17, 1993. The plaintiff, without using the term “continuous treatment doctrine,” urges this court to find that the defendant’s failure to order specific tests between October 17, 1993 and December 1996 amounted to negligence by omission. This position, unsupported by case law, is a veiled attempt to apply the doctrine despite the clear language used by the SJC regarding the medical malpractice period of repose. Shapiro cannot be held responsible for the treatment of Toas between the dates of October 17, 1993 and December 1996. Shapiro did not treat Toas during that time period and his treatment of Toas during the December 1991 though February 1993 time period cannot be used to hold him responsible for alleged omissions that occurred months or years later. This result would circumvent the purpose of the statute of repose. The SJC, in Rudenauer, failed to adopt the “continuous treatment” argument set forth by the plaintiff, and this court, likewise, fails to adopt the same argument.[6]

B. Liability for Treatment Between December 1996 and February 1997

In addition, the plaintiff claims this case “is about . .. negligence in the care provided between December 2, 1996 and February of 1997.” Plaintiffs Opp. To Renewed Motion for S.J. at page 3. The plaintiff relies on his expert, Dr. Sokol’s (Sokol), statement that “diagnosing and treating cancer at an earlier stage improves the odds of survival and it is likely that Mrs. Toas’s survival opportunities would have been improved if earlier diagnosis of cancer had been obtained." Sokol Letter Dated January 28, 2005 at page 2. While the plaintiff argues in his brief that this statement suggests Shapiro failed to comply with the standard of care upon Toas’ return in 1996, there is no evidence that any act or omission by Shapiro in 1996 or 1997 was casually connected to her eventual death and plaintiff so conceded the point at oral argument. Sokol states that the standard of care demands that “patients at the age of 50 undergo routine sigmoidoscopy, colonoscopy and/or stool guiac” and that the “failure to do so was a clear cut deviation from the standard of care,” Sokol Letter Dated May 30, 2001 at page 1, however, he fails to definitively state that administering these tests in or after December 1996 would have resulted in a different outcome. The only proffered expert testimony on causation is that Shapiro should have ordered a sig-moidoscopy and colonoscopy “long before” December 1996 and if these tests had been done “prior to December of 1996, [Toas] would have had a different outcome.” Plaintiffs First Sup. Response to Interr. at page 2. Therefore, based on the medical malpractice period of repose and the expected testimony of plaintiffs expert, the only time period for which Shapiro could be liable for negligence occurred between October 17, 1993 and November 1996, a period in which Shapiro never treated Toas.
ORDER
It is therefore ORDERED that defendant’s motion for summary judgment be ALLOWED.

Joslyn v. Chong, 445 Mass. 344 (2005); Rudenauer v. Zaftropoulos, 445 Mass. 353 (2005).

This court (Connon, J.) ruled on defendant’s original motion for summary judgment on October 6, 2005 and the Joslyn and Rudenauer cases were decided on November 21, 2005.

G.L.c. 260, §4, second par., provides: “Actions of contract or tort for malpractice, error or mistake against physicians, surgeons . . . hospitals and sanatoria shall be commenced only within three years after the cause of action accrues, but in no event shall any cause of action be commenced more than seven years after the occurrence of the act or omission which is the alleged cause of injury upon which such action is based except where the action is based upon leaving of a foreign object in the body.”

The factual similarity between the Rudenauer and this case is striking. In Rudenauer, the plaintiff spouse brought a medical malpractice suit in 2001 against the decedent’s medical provider. The defendant treated the decedent in 1990 and 1991 and again in 1995. The plaintiff argued that the doctor’s duty to conduct follow-up monitoring after 1991, along with the decedent’s return to the doctor in 1995, constituted ongoing treatment through 1995. On appeal, the SJC sought to determine whether the purported continuing treatment until 1995 relieves the plaintiff of application of the seven-year statute of repose. The SJC concluded that the absolute language of the statute precludes such a result.

To date, the SJC has not adopted the continuous treatment doctrine. See Harlfinger v. Martin, 435 Mass. 38 (2001). In Harlftnger, the SJC stated that “the [continuous treatment] doctrine appears contrary to the express terms of [the statute *197 of repose].” Harlfinger, 435 Mass. at 52, n.18. Jurisdictions that have adopted the doctrine usually only do so when active treatment is ongoing, and decline to toll the statute merely because of the ongoing existence of a passive patient-doctor relationship. See, e.g., Raynor v. Kyser, 338 Ark. 336, 372 (1999) (continuous treatment doctrine requires “active, ongoing medical care and attention beyond the time of a specific negligent act or series of acts”; three and one-half-year hiatus between visits defeats claim of continuous treatment); Ewing v. Beck, 520 A.2d 653, 659-61 (Del. 1987) (declining to adopt continuing treatment doctrine where Legislature had not included it within express wording of unambiguous statute of limitations); McDermott v. Torre, 56 N.Y.2d 399, 406 (1982) (continuous treatment doctrine “does not contemplate circumstances where a patient initiates return visits merely to have his or her condition checked”).